# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

| | |
|---|---|
| Kyle Beer, individually and on behalf of all others similarly situated, | Case No.: 1:23-cv-00055-MFU-PMS |
| Plaintiff, | |
| v. | |
| Bluefield University, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
<u>AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

PLEASE TAKE NOTICE Plaintiff Kyle Beer ("Plaintiff"), by and through the undersigned Settlement Class Counsel,[1] on behalf of himself and the Settlement Class, submits this Memorandum of Law in support of his Unopposed Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Plaintiff and Class Counsel secured an outstanding settlement on behalf of the Settlement Class, which was preliminarily approved on November 22, 2024. *See* ECF No. 29. Plaintiff now seeks an order finally approving the Settlement[2] which, if approved, will successfully resolve the claims of the nationwide Settlement Class Members who were notified of a data security incident announced by Defendant Bluefield University ("Defendant" or "Bluefield") in November of 2023 (the "Security Incident" or "Incident"). As discussed below, the Settlement provides for a non-reversionary common fund of $500,000 (the "Settlement Fund") from which Settlement Class Members are able to claim settlement benefits, including: (1) reimbursement for Out-of-Pocket Losses up to $4,500.00 per Settlement Class Member; (2) reimbursement for Attested Time Spent in an amount of $25.00 per hour up to five (5) hours; (3) three years of Credit Monitoring and Identity Theft Protection; and (4) a one-time Alternative Cash Payment of up to $100.00 S.A. ¶¶ 2.2-2.6. Further, the Settlement Fund will be used to pay all costs of notice and administration, presently estimated to be $55,000. *See* Declaration of Bryn Bridley of Atticus Administration LLC on Notice and Settlement Administration ("Atticus Decl."), attached hereto as **Exhibit 2**. In addition to the opportunities for monetary recovery, Defendant agreed to implement additional remedial measures taken after the Data Breach. SA ¶ 2.6. Therefore, the settlement provides

---

[1] The Court appointed William B. Federman of Federman & Sherwood as Settlement Class Counsel or "Class Counsel" on November 22, 2024. *See* ECF No. 34.

[2] Unless otherwise defined, all capitalized terms have the meaning set forth in the Settlement Agreement ("SA").  *See* ECF No. 29-1.

meaningful relief to the Settlement Class Members and resolves their injuries without further delay and risk of continued litigation.

The Settlement Agreement was reached following an extensive investigation, the exchange of informal discovery, and months of settlement negotiations. *See* Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Federman Decl."), attached hereto as **Exhibit 1**. After agreeing to the material terms of the Agreement, Plaintiff and Defendant (collectively, the "Parties") continued to negotiate the Settlement Agreement that is presently before the Court for final approval. *Id*. ¶ 4. Subsequently, on November 22, 2024, the Court preliminarily approved the Settlement Agreement finding that the Agreement was fair, reasonable, and adequate. *See* ECF No. 34, p. 2.

Following granting of preliminary approval of the Agreement, the Claims Administrator, with the help of the Parties, successfully disseminated notice of the terms of the Agreement to the Settlement Class Members. *See* Atticus Decl. ¶ 7. Notice was directly sent to the Settlement Class via U.S. Mail and was successfully received by roughly 98.44% of the Settlement Class for whom Defendant had mailing and email addresses. *Id*. ¶ 10. The notice provided Settlement Class Members with information regarding how to submit a Valid Claim, how to reach the Settlement Website, and how to submit a valid objection or opt-out. *Id*. ¶ 7. To date, no Settlement Class Members have opted out of the Agreement and no Settlement Class Member has filed an objection to the Agreement. *Id*. ¶ 15. Further, 670 Settlement Class Members submitted Valid Claims, which is an excellent valid claims rate of 3.14%. *Id*. ¶ 17. Therefore, the notice program was efficient and effective, and since the Court granted preliminary approval, nothing has changed to alter the Court's initial finding that the Agreement is fair, reasonable, and adequate.

For these reasons, the Settlement Agreement meets the standards for final approval under Fed. R. Civ. P. ("Rule") 23, and it is fair, reasonable, and adequate. Plaintiff respectfully requests

the Court give final approval of the Agreement, finally certify the Settlement Class, grant

Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (ECF

No. 35) (the "Fee Motion"), and enter a final judgment dismissing the case.

## II.    THE SETTLEMENT TERMS

The Settlement negotiated on behalf of the Settlement Class establishes a $500,000.00 non-

reversionary Settlement Fund, which will be used to pay for Administration and Notice Costs;

Attorneys' Fees approved by the Court; Expenses approved by the Court; and all approved Claims.

S.A. ¶ 2.1. Specifically, the Settlement provides for the following relief for Settlement Class

Members: (1) reimbursement for Out-of-Pocket Losses up to $4,500.00 per Settlement Class

Member; (2) reimbursement for Attested Time Spent in an amount of $25.00 per hour up to five

(5) hours; (3) three (3) years of Credit Monitoring and Identity Theft Protection; and (4) a one-

time Alternative Cash Payment of up to $100.00 S.A. ¶¶ 2.2-2.6.

### A.  Definition of the Settlement Class

Plaintiff requests certification, for settlement purposes only, of a nationwide class of

individuals, defined as follows:

> [A]ll natural persons residing in the United States who were sent a notice letter
> notifying them that their PII was compromised in the Incident, or for whom
> Bluefield has alternate contact information.

SA, ¶ 1.25. The Settlement Class specifically excludes: (i) Bluefield, the Related Parties, and their

officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion

from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv)

any other Person found by a court of competent jurisdiction to be guilty under criminal law of

initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads

*nolo contendere* to any such charge. *Id.*

### B.  Benefits to the Settlement Class

4

### i.      Reimbursement For Out-of-Pocket Losses

All Settlement Class Members had the opportunity to submit a claim for up to Four Thousand Five Hundred Dollars ($4,500.00) for reimbursement of Documented Out-of-Pocket Losses. *Id.* ¶ 2.2. To receive reimbursement for Documented Out-of-Pocket Losses, Settlement Class Members needed to submit a valid Claim Form that included the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. *Id.* Settlement Class Members also had the opportunity to claim reimbursement for Documented Out-of-Pocket Losses **and** a claim for Lost Time (described below), but in no circumstance were Settlement Class Members eligible to receive more than the $4,500.00 individual cap. *Id.*

### ii.      Reimbursement for Lost Time

All Settlement Class Members had the opportunity to submit a claim for reimbursement of attested Lost Time up to five (5) hours at twenty-five dollars ($25.00) per hour. *Id.* ¶ 2.3. Settlement Class Members received reimbursement of Lost Time with an attestation that the time spent was reasonably related to mitigating the effects of the Data Security Incident. Claims for Lost Time were capped at One Hundred Twenty-Five ($125.00) per individual. *Id.*

### iii.     Credit Monitoring and Identity Theft Protection

All Settlement Class Members had the opportunity to enroll in three (3) years of one-bureau Credit Monitoring and Identity Theft Protection Services provided by CyEx, regardless of whether the Settlement Class Member submitted a claim for reimbursement of Documented Out-of-Pocket Losses or Lost Time. *Id.* ¶ 2.4. A Settlement Class Member who opted into the complimentary credit monitoring services offered by Defendant in its November 27, 2023 Notice Letter, was still eligible to enroll in the three (3) years of one-bureau Credit Monitoring and Identity Theft Protection Services provided by CyEx. *Id.* However, if a Settlement Class Member elected to

receive an Alternative Cash Payment (discussed below) they were not eligible to receive Credit Monitoring and Identity Theft Protection Services. *Id*.

### iv.    Alternative Cash Payment

In lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses, reimbursement for Lost Time, and/or Credit Monitoring and Identity Theft Protection Services, all Settlement Class Members had the opportunity to submit a claim for a one-time Alternative Cash Payment of up to One Hundred Dollars and Zero Cents ($100.00). *Id*. ¶ 2.5. To receive the Alternative Cash Payment, Settlement Class Members needed to submit a valid Claim Form indicating the selection of an Alternative Cash Payment in lieu of all other benefits they may be eligible to receive under the Settlement Agreement. *Id*. However, the election to receive an Alternative Cash Payment did not preclude the Class Representative from receiving a Court approved service award payment. *Id*.

### C.  Notice to the Settlement Class Complied with Due Process and Rule 23

Notice was carried out by Atticus Administration, LLC ("Atticus" or "Claims Administrator") pursuant to the Settlement Agreement and Preliminary Approval Order (ECF No. 29). After receiving a data file from Defendant on September 5, 2024 that contained the name and address or email address of 21,348 U.S. residents, Atticus reviewed the data file, 25 duplicate records were removed, and the final class list included 21,323 Settlement Class Members. *See* Atticus Decl. ¶ 5. Prior to mailing notice of the Agreement, the Claims Administrator checked the Settlement Class Members' mailing addresses against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"). *See Id*. ¶ 6. Subsequently, notice was sent to the 21,323 Settlement Class Members for whom Defendant had valid mailing and email addresses. *Id*. ¶ 5. Of the 21,300 Short Notice forms sent by mail, 771 were returned to

Atticus, and 2 of the returns included forwarding information and were promptly remailed to the forwarding addresses provided by USPS. *Id.* ¶ 9. To date, only eight (8) undeliverable records have not been successfully traced. *Id.* Seven hundred sixty-one (761) of the remaining undeliverable records were sent to a professional service for address tracing where address updates were obtained for 454 undeliverable records and were not obtained for 307 records. The Short Form Notice was promptly remailed to the 454 addresses obtained through trace, 38 of which were again returned to Attius. *Id.* As such, 20,947 Short Notices or 98.34% of the postcards were successfully mailed. *Id.* Further, twenty-three (23) Long Notices were emailed to Settlement Class Members for whom Defendant had valid email addresses, with twenty-one (21) being successfully delivered. *Id.* ¶ 10. Therefore, combined with mailing and email efforts, 20,968 Notices or 98.44% of the overall notice dissemination was successful. *Id.*

In addition to the direct mail and email notice, throughout the notice and claims period, Atticus published and continues to maintain an interactive Settlement Website, BluefieldSettlement.com. *Id.* ¶ 11. Visitors to the Settlement Website can download important case and settlement documents, including the Long Notice form, the Preliminary Approval Order, Settlement Agreement, and the Class Action Complaint. *Id.* ¶ 12. Further, Settlement Class Members are able to submit claims for settlement benefits electronically on the Settlement Website, and also contact Atticus directly, find answers to frequently asked questions ("FAQs"), and find important dates and deadlines. *Id.* Atticus also established a toll-free telephone number for this case ((800) 417-6705), which was activated on January 5, 2025 (and remains active) and has received 22 calls. *Id.* ¶ 13.

The timing of the notice program and claims period was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement Agreement, compile documents supporting their claims, and decide whether they would like to opt-out or

object. In fact, Settlement Class Members were given 60 days from the date notice was mailed or

emailed to file objections or opt-out of the Agreement and, to date, *zero* Settlement Class Members

have sought to be excluded from the Agreement, and no Settlement Class Members have objected.

*Id*. ¶ 14. The Settlement Class Members have responded favorably to the Agreement, with the

valid claims rate being 3.14%, which is in line with comparable data breach class actions. *Id*. ¶ 17.

Further, Class Counsel and Atticus anticipate the claims rate may increase with the submission of

additional claims as the Claims Deadline is not until April 7, 2025.

## III.    LEGAL ARGUMENT

When deciding to finally approve a class action settlement, a court considers whether the

proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers

whether:

> (A) the class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
> the class is adequate, taking into account: (i) the costs, risks, and delay of trial and
> appeal; (ii) the effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

*Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (citing

Fed. R. Civ. P. 23(e)). Furthermore, the Fourth Circuit instructs district courts to also consider a

series of factors to determine whether a proposed settlement is fair, reasonable, and adequate. *See*

*In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). To determine the fairness of

the proposed settlement, the Court considers: (1) the posture of the case at the time settlement was

proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding

the negotiations, and (4) the experience of counsel in the area of class action litigation. *See Jiffy*

*Lube*, 927 F.2d at 159. There is "a strong presumption in favor of finding a settlement fair."

*Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). In addition, to determine the adequacy of a proposed settlement, the Court also considers: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id.*

### A. The Settlement is Fair, Reasonable, and Adequate

#### i. The Rule 23(e) Factors and the *Jiffy Lube* Factors are Satisfied.

On November 22, 2024, the Court preliminarily determined that the Agreement is fair, reasonable, and adequate under Rule 23(e). ECF No. 34, p. 2. The factors identified in Rule 23(e) and *Jiffy Lube* were satisfied when the Court granted preliminary approval and remain unchanged. Therefore, for the foregoing reasons, the proposed settlement is fair, adequate, and reasonable, and the Court should grant final approval of the Agreement.

#### (A)  Fed. R. Civ. P. 23(e)(2)(A): Plaintiff and Class Counsel have Adequately Represented the Class.

"The adequacy requirement is met when: (1) the named plaintiff does not have any interests antagonistic to those of the class; and (2) plaintiff's attorneys are "qualified, experienced, and general able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). This factor heavily weighs in favor of granting final approval because both Class Counsel and the Class Representative have adequately represented the Class. Class Counsel has adequately represented the Settlement Class by fully investigating the facts and legal claims; preparing the Complaint; conducting informal discovery; negotiating and reaching a Settlement at arm's length, in good faith, and without collusion; and working to finally resolve this case in

Plaintiff's and Class Members' favor. Federman Decl. ¶ 7. Additionally, the Settlement Class

Representative has also demonstrated his adequacy by: (i) having a genuine personal interest in

the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information

and documents to Class Counsel to permit investigation and development of the Class Action

Complaint; (iv) being available as needed throughout the litigation; (v) monitoring the litigation;

and (vi) being available as needed throughout the settlement approval process. *Id*. ¶ 12. Further,

Class Counsel specializes in data breach class actions and has the experience and qualifications to

prosecute this litigation and achieve an excellent settlement for the Settlement Class. *Id*. ¶ 11; *see

also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. &

Prods. Liability Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex

civil litigation supported fairness of settlement).

### (B)    Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length

A strong presumption of fairness attaches to a proposed settlement where "the settlement

is reached through arm's length bargaining…[and] investigation and discovery are sufficient to

allow counsel and the court to act intelligently…." *Brunson v. Louisiana-Pacific Corp.*, 818

F.Supp.2d 922, 927 (D.S.C. 2011) (citing Newberg & Conte, Newberg on Class Actions (3d ed.

1992) § 11.41.). The Parties' proposed settlement is the result of intensive, arm's-length

negotiations between experienced attorneys who are familiar with data breach class action

litigation and with the legal and factual issues in these cases. Federman Decl. ¶ 4. Before discussing

a potential settlement, the Parties completed and engaged in meaningful informal discovery. *Id*.

This allowed the Parties to adequately understand the claims, defenses, and risks of continued

litigation. *Id*. The Agreement is the result of prolonged and serious arms' length negotiations

between counsel for the Parties, who fought hard for the interests of their respective clients. *Id*.

The fact that the Settlement was achieved through well-informed, and arm's-length negotiations weighs in favor of granting final approval.

### (C)    The Relief Provided is Adequate

The relief provided to Settlement Class Members is adequate considering the injuries suffered from the Incident and is commensurate with the factors outlined in Rule 23(e)(2)(C). To determine whether the relief to the Settlement Class is adequate, the Court takes into account: (i) the costs, risk, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Fed. R. Civ. P. 23(e)(3).

### 1.    The costs, risk, and delay of trial and appeal.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. This case will take years to litigate with briefing and arguing of dispositive motions; engaging in voluminous discovery; participating in mediation sessions; and months of continued settlement negotiations. Federman Decl. ¶ 11. Further, given the complexity of the claims and arguments here, a lengthy trial would follow. Thus, the extensive risk of prolonged litigation here favors final approval.

While Plaintiff is confident in his claims, data breach class actions are notoriously risky cases. For example, historically, data breach cases face substantial hurdles in surviving the class certification stage. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc*., No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (Observing that "[d]ata breach

litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases…are particularly, risky, expensive, and complex."). Further, maintaining class certification through trial is another over-arching risk emphasizing what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiff. Thus, the costs, risks, and delay of continued litigation are great, and weigh heavily in favor of final approval.

### 2. The effectiveness of distributing notice to the Class.

The method of distributing the settlement benefits to the Settlement Class Members by Atticus was equitable and efficient. Specifically, the notice plan implemented by Atticus plainly and clearly articulated the available relief to Settlement Class Members and specifically outlined their avenues for securing different forms of relief. As part of the notice plan, Atticus disseminated individual notice through postcard (Short Notice) to approximately 21,300 Settlement Class Members for whom mailing addresses were received via U.S. First Class Mail. Atticus Decl. ¶ 7. Further, for the 23 Settlement Class Members for whom only email addresses were available, Atticus disseminated Long Notice by email. *Id*. ¶ 8. Together, postcard and email notice successfully reached 98.44% of the overall Settlement Class. *Id*. ¶ 10. Atticus also established and continues to maintain an interactive Settlement Website, which includes the Long Notice, Preliminary Approval Order, Settlement Agreement, Class Action Complaint, answers to frequently asked questions, key dates and deadlines, and an online claim form where Settlement Class Members were able to submit claims. *Id*. ¶ 11-12. Finally, Atticus also established and continues to maintain a toll-free telephone number for this case for the purpose of communicating with Settlement Class Members. *Id*. ¶ 13. In sum, Settlement Class Members received effective

and efficient notice of the relief offered under the Agreement and this factor weighs heavily in favor of final approval.

### 3. The terms of any proposed award of attorney's fees.

Class Counsel requested 30.00% of the Settlement Fund in attorneys' fees and expenses ($150,000). As explained in Plaintiff's Fee Motion (ECF No. 35), Class Counsel's request is reasonable considering other fee awards routinely granted in the Fourth Circuit, including data breach class action settlements. *See, e.g.*, *Tiller v. Hilb Group Operating Co., LLC*, No. 3:23-cv-00759-JAG (E.D. Va. Feb. 3, 2025) (ECF No. 48) (data breach class action awarding attorneys' fees of one-third of the settlement fund); *In re Novant Health, Inc*., No. 1:22-CV-697, 2024 WL 3028443, at *11 (M.D.N.C. June 17, 2024) (data breach class action affirming award of attorneys' fees equal to one-third of the settlement); *In re R&B Corp. of Virginia d/b/a Credit Control Corp.*, No. 4:23-cv-00066-JKW-RJK, 2025 WL 354989, at *4 (data breach class action granting class counsel's application for attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund); *Lamie v. Lending Tree, LLC*, No. 3:22-cv-00307-FDW-SCR, Doc. No. 60 (W.D.N.C. Feb. 27, 2024) (approving a one-third contingent fee for common fund data breach settlement); *Thomsen v. Morley Cos., Inc*., No. 1:22-cv-10271, No. 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (noting that "a 33% award is presumably reasonable" for attorneys' fees in a data privacy class action); *In re Forefront Data Breach Litig*., No. 21-cv-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (awarding attorneys' fees of one-third of the settlement fund in a data privacy class action settlement). Here, Class Counsel requests a fee and expense award of 30% of the Settlement Fund (S.A. ¶ 7.1), which is less than the 33% benchmark routinely found reasonable by district courts within the Fourth Circuit.

Further, as anticipated, additional time has been spent by Class Counsel and Plaintiff's supporting counsel with a current lodestar of $80,953.66, which results in a lodestar multiplier of

1.9. Federman Decl. ¶ 9. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award, expense, or requested service award. Therefore, this factor supports approval of the proposed Agreement.

### 4. Any agreement required to be identified under Fed. R. Civ. P. 23(e)(3).

The Parties have not reached any other agreements affecting the settlement of this lawsuit other than the Settlement Agreement before the Court. Thus, this factor weighs in favor of final approval of the Agreement.

### (D) The Parties' Proposed Settlement Treats Settlement Class Members Equally.

The Parties' proposed settlement treats the Settlement Class Members equitably relative to each other. Here, all Settlement Class Members had their PII compromised in the Incident, and all received the same remedy and equal opportunity to claim the benefits of the Parties' proposed settlement.

### (E) The Relative Strength of the Plaintiff's Case on the Merits and the Existence of any Difficulties of Proof or Strong Defenses the Plaintiff is Likely to Encounter if the Case Goes to Trial.

"Although a court is not to decide the merits of the case when reviewing the adequacy of a proposed settlement, the court can assess the relative strengths and weaknesses of the settling parties' positions." *Case v. French Quarter III LLC*, Nos. 9:12-cv-02804-DCN, No. 2:12-cv-02518-DCN, 2015 WL 12851717, at *8 (D.S.C. July 27, 2015). As stated above, although the Plaintiff is confident in the strength of his allegations and supporting evidence, Plaintiff's ability to prevail on the merits is uncertain. Here, Defendant may assert a number of case dispositive defenses and Plaintiff will face challenges, such as surviving a likely motion to dismiss, motion for summary judgment, and securing and maintaining class certification. The Parties' proposed settlement allows the Settlement Class Members to obtain benefits within the near future—as

14

opposed to potentially waiting years—and eliminates the possibility that the Class Members receive no benefit. Therefore, considering the risks Plaintiff faces going forward, the relief provided by the Parties' proposed settlement is well balanced against the hurdles Plaintiff will have to overcome to successfully litigate this case. Thus, this factor weighs in favor of final approval.

### (F) The Anticipated Duration and Expenses of Additional Litigation.

The costs, complexity, length, and expense of further litigation favors the Parties' proposed settlement. While the Parties have conducted informal discovery for settlement purposes, in the event litigation proceeds, the Parties would need to engage in further and significant discovery. The Parties would require experts, and the costs of testifying experts addressing the economic harm caused to consumers would be substantial. Further, continued litigation would surely involve motions to dismiss, motions for summary judgment, a motion for class certification, and appeals, which would all cause a delay in final resolution. Therefore, this factor weighs in favor of final approval.

### (G) The Solvency of Defendant and the Likelihood of Recovery on a Litigated Judgment.

Defendant's solvency is not an issue, and it can likely withstand a judgment in an amount larger than the settlement amount. However, the risks and costs associated with continuing litigation, including the potential depletion of available insurance coverage, combined with the immediate benefits to the Settlement Class, easily outweighs this factor and supports final approval.

### (H) Degree of Opposition to the Settlement.

Finally, the Court should weigh whether there exists opposition to the proposed Agreement. *See Jiffy Lube*, 927 F.2d at 158-59. As discussed above, the reaction of the Settlement

Class to the Agreement has been extremely positive as *zero* objections or opt-outs were received. Atticus Decl. ¶ 15. Further, 670 valid claim forms have been submitted to Atticus, which is a fulsome valid claims rate of 3.14% based on the total number of valid claims submitted to date, which compares favorably to other data breach class actions. *Id*. ¶ 17; *see also In re Wawa, Inc. Data Sec. Litig.*, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (approving data breach class action with 2.56% claims rate); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class in data breach settlement). Therefore, the Settlement Class Members' significant support and participation in the settlement weighs in favor of granting final approval.

**B. The Court Should Finally Certify the Proposed Settlement Class**

On November 22, 2024, the Court preliminarily certified the Settlement Class and found that "the proposed Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3)." ECF No. 34, pp. 1-2. The Settlement Class continues to fulfill for purposes of this settlement the Rule 23(a) and Rule 23(b) requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority asserted in the Plaintiff's Motion for Preliminary Approval, and which were preliminarily approved and deemed adequate by the Court. *Id*. The circumstances remain unchanged since the Court granted preliminary approval, and the Court should finally certify the Settlement Class for settlement purposes.

**i.    Rule 23(a) Requirements are Met for Settlement Purposes**.

***Numerosity***. The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is generally a low hurdle and there is no set number of members required to satisfy the numerosity requirement for class certification. *Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*, No. 7:16-cv-28, 2017

WL 396667, at *2 (E.D.N.C. Jan. 27, 2017) (finding numerosity requirement was met for a proposed class consisting of approximately 135 individuals). The Settlement Class here includes over 21,000 individuals, thereby satisfying the numerosity requirement.

*Ascertainability*. "A class cannot be certified unless a court can readily identify the class members in reference to objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Identifying Settlement Class Members here was simple and objective: on September 5, 2024, Defendant shared a data file that contained the name and address or email address of the 21,348 U.S. residents who received a notice letter notifying them that their PII was compromised in the Incident. Atticus Decl. ¶ 5. As such, the Court can readily identify the Settlement Class Members and ascertainability is satisfied.

*Commonality*. Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). The commonality requirement is liberally construed and "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). In fact, the commonality requirement is met where the Defendant has engaged in a common course of conduct. *Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003); *see also Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) (finding commonality requirement was met where defendants acted in a common way towards the class members). Here, as stated in Plaintiff's Motion for Preliminary Approval (ECF No. 34), Plaintiff's claims turn on the adequacy of Defendant's data security in protecting Plaintiff's and Class Member's PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is met.

*Typicality.* A class representative's claims must also be typical of the putative class they

seek to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement is met where Plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [plaintiffs'] claims are based on the same legal theory." *Rogers*, 160 F.R.D. at 538. (*quoting De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "The named plaintiff's interest in prosecuting [their] case must simultaneously tend to advance the interests of the absent class members." *Beaulieu v. EQ Indus. Services, Inc.*, No. 5:06-cv-00400, 2009 WL 2208131, at *13 (E.D.N.C July 22, 2009) (*citing Dieter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Further, the typicality requirement does not require the Plaintiff to have identical legal claims as the Settlement Class Members, rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Plaintiff's] proof of their own individual claim[s]." *Id.* at 13. Here, Plaintiff's interests remain aligned with the Settlement Class because they all received a notice letter from Defendant informing them their PII may have been compromised as a result of the Incident and was therefore impacted by the same allegedly inadequate data security that allegedly harmed the rest of the Settlement Class. Thus, Typicality is met.

**Adequacy.** Finally, Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, a plaintiff must demonstrate that the named class representatives "(1) will vigorously prosecute the interests of the class through qualified counsel and (2) that they have common interests with unnamed members of the class." *Beaulieu*, 2009 WL 2208131 at *15. "[C]ourts generally hold that the employment of competent counsel assures vigorous prosecution." *South Carolina Nat. Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C. 1991). The Class Representative here continues to have no conflicts with the Settlement Class and has demonstrated his adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class

Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; (v) monitoring the litigation; and (vi) being active and engaged throughout the settlement approval process. Federman Decl. ¶ 12. Moreover, Class Counsel is adequate because of their vast experience as vigorous data breach class action litigators, as previously found by the Court in its Preliminary Approval Order. *See Id.* ¶ 11; ECF No. 34.

ii.     **Rule 23(b) Requirements Are Met for Purposes of Settlement**

***Common Questions of Law and Fact Predominate****. A predominance inquiry requires that common questions of law or fact "must predominate over any questions affecting only individual members." *Soutter v. Equifax Information Services, LLC*, 307 F.R.D. 183, 213-14 (E.D. Va. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). To satisfy the predominance requirement, "the court generally needs to determine only whether the common questions predominate over individual questions as to liability." *Beaulieu*, 2009 WL 2208131 at 21. Further, the fact that Settlement Class Members may have suffered individual damages "will not alone defeat certification." *Id.*; *see also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427-28 (4th Cir. 2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.").

Here, as previously stated in Plaintiff's Motion for Preliminary Approval (ECF No. 28), common questions predominate because all claims arise out of a common course of conduct by Defendant. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 311-16 (N.D. Cal. 2018). The focus on a Defendants' security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. All Class Members had their PII compromised in the Incident and the security practices at issue did not vary from person to person. Thus, because these common questions represent a significant

aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. Thus, the predominance requirement is readily satisfied.

      ***Class Action is the Superior Method of Adjudication.*** Moreover, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *See Beaulieu*, 2009 WL 2208131 at 22 (*quoting Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3rd Cir. 2008)).

      Adjudicating individual actions here is still impracticable: the amount in dispute for individual class members is too small, there are over 21,000 Settlement Class Members, the technical issues involved are too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Therefore, the Court should finally certify the Settlement Class for settlement purposes pursuant to Rule 23(b)(3).

## C. The Court Should Approve the Requested Attorneys' Fees, Expenses, and Service Award

      As demonstrated by Plaintiff's Fee Motion (ECF No. 35), the requested attorneys' fees, costs, and expenses are reasonable and should be approved. Further, as also demonstrated by Plaintiff's Fee Motion (ECF No. 35) and the accompanying declaration of Class Counsel, Class

Counsel diligently and zealously pursued the litigation to achieve an excellent settlement for the Plaintiff and Settlement Class Members. *See* ECF No. 35-1; Federman Decl. ¶ 4. As of February 24, 2025, Class Counsel and Plaintiff's supporting counsel had devoted 107.6 hours to prosecuting this case, for a lodestar of $70,452.00. *Id*. ¶ 14. At the time of filing Plaintiff's Fee Motion, the requested fee and expense award reflected a multiplier of 2.1. *Id*. Since the filing of Plaintiff's Fee Motion, Class Counsel and Plaintiff's supporting counsel have accrued an additional 16.6 hours of work on this matter, representing an additional $8,992.50 in attorneys' fees. Federman Decl. ¶ 9. Thus the total lodestar is now $80,953.66, which represents a lodestar multiplier of roughly 1.9, with the final approval hearing still to come. *Id*.

Plaintiff also requested a $1,500 service award (ECF No. 35). As explained in Plaintiff's Fee Motion, service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action…." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015). District courts within the Fourth Circuit routinely grant service awards greater than the amount requested by Plaintiff and Class Counsel. *See e.g.*, *In re: Novant Health, Inc.*, 2024 WL 3028443, at *11 (data breach class action affirming service awards of $2,500 for each of the 10 named class representatives); *Hilb Group*, No. 3:23-cv-00759-JAG (E.D. Va. Feb. 3, 2025) (ECF No. 48) (data breach class action awarding service awards of $3,000 to each of the 5 named class representatives); *Brown v. Charles Schwab & Co., Inc.*, No. 2:07-cv-03852, 2011 WL 13199227, at *7 (D.S.C. July 26, 2011) (approving $10,000 service award to named plaintiff); *see also In re MI Windows & Doors Prods. Liab. Litig.*, No. 2:12-mn-00001, 2015 WL 4487734, at *5 (D.S.C. July 23, 2015) (granting "modest" service award of $5,000 for each named Plaintiff); *Neal v. Wal-Mart Stores, Inc.*, 3:17- cv-00022, 2021 WL 1108602, at *2 (W.D.N.C. Nov. 2, 2015) (approving service awards of $10,000 to each Settlement Class Representative). In determining the reasonableness of a service award, courts

contemplate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort plaintiff expended in pursuing the litigation." *Manuel v. Wells Fargo Bank, Nat'l Ass n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. 2016) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Here, as explained in Plaintiff's Fee Motion, Plaintiff amply fulfilled his duties as a Class Representative with his active involvement throughout the case and settlement. *See* ECF No. 35, p. 23.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court enter an order finally approving the Agreement as fair, reasonable, and adequate under Rule 23(e)(2), finally certifying the Settlement Class, and granting the request for attorneys' fees, expenses, and service award.

Dated: April 1, 2025                Respectfully submitted,

*/s/: William B. Federman*
William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
-and-
4131 North Central Expressway, Suite 900
Dallas, Texas 75204
T: (405) 235-1560
wbf@federmanlaw.com

Alexis I. Tahinci
VSB No. 85996
**TAHINCI LAW FIRM PLLC**
105 Ford Avenue, Suite 3
Kingsport, TN 37663
(423) 406-1151
alexis@tahincilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

/s/ *William B. Federman*
William B. Federman