# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

| | |
|---|---|
| Kyle Beer, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Bluefield University,<br><br>Defendant. | Case No.: 1:23-cv-00055-MFU-PMS |

**DECLARATION OF WILLIAM B. FEDERMAN IN SUPPORT OF PLAINTIFF'S**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, **William B. Federman**, declare under penalty of perjury as follows:

1.      I am an attorney duly admitted to the bars of the states of Texas, Oklahoma, and New York.  I was admitted pro hac in this case on December 28, 2023 (ECF No. 7). I am a founder and managing member of the law firm Federman & Sherwood and am Class Counsel for Plaintiff and the Settlement Class ("Class Counsel")[1] in the above referenced action (the "Action"). I submit this declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law in Support, filed contemporaneously herewith.

2.      Plaintiff Kyle Beer ("Plaintiff"), on behalf of himself and all other members of the putative class, and Defendant Bluefield University ("Bluefield" or "Defendant") (collectively, the "Parties") reached an agreement to settle this Action pursuant to the terms of the Settlement Agreement, attached as **Exhibit 1** to Declaration of William B. Federman in Support of Plaintiff's

---

[1] The Court appointed William B. Federman of Federman & Sherwood as Settlement Class Counsel on November 22, 2024. *See* ECF No. 34.

Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 29-1).[2]

3.      On December 9, 2023, Plaintiff filed his Class Action Complaint against Defendant alleging Defendant negligently failed to adequately protect Plaintiff's and the Class's PII from unauthorized access. *See* Plaintiff's Class Action Complaint (ECF No. 1).

4.      After starting productive discussions related to the prospect of reaching a class-wide resolution, Plaintiff and Defendant (the "Parties") exchanged informal discovery that enabled each side to evaluate the strengths of the other's respective position. On April 29, 2024, the Parties reached an agreement in principle on settlement terms for class-wide resolution. On May 9, 2024, the Parties submitted a joint status report informing the Court of their agreement in principle and efforts made to settle the case. After agreeing to the material terms of the Agreement, the Parties continued to negotiate to arrive at the Settlement Agreement that was presented to this Court on September 3, 2024 (ECF No. 28), and was given preliminary approval on November 22, 2024 (ECF No. 34). The Settlement Agreement is now presently before the Court for final approval. The terms of the settlement are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith, and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the litigation. The Agreement is the result of prolonged and serious arms' length negotiations between counsel for the Parties, who fought hard for the interests of their respective clients.

5.      After the settlement was reached, the Parties worked diligently to: (i) finalize the settlement documentation, including the Settlement Agreement and accompanying exhibits (ECF No. 29-1), Plaintiff's Unopposed Motion for Preliminary Approval and declaration in support

---

[2] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

(ECF Nos. 28, 29), Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (ECF No. 35), and Plaintiff's Motion for Final Approval of Class Action Settlement and Memorandum of Law in Support; (ii) solicit bids and mutually agree on a Claims Administrator; and (iii) negotiate the verification that remedial security measures have been implemented or will be implemented by Defendant in the future.

6.     The Settlement provides significant benefits to the Settlement Class Members. The Settlement provides for multiple forms of relief, including: (i) Reimbursement for Out-of-Pocket Losses; (ii) Reimbursement for Lost Time; (iii) Credit Monitoring and Identity Theft Protection; (iv) an Alternate Cash Payment; and (v) Remedial Measures to Defendant's data security.

7.     Class Counsel has adequately represented the Class by fully investigating the facts and legal claims; preparing the Class Action Complaint; conducting informal discovery; negotiating and reaching a fair, reasonable and adequate Settlement negotiated at arm's length, in good faith, and without collusion; and working to finally resolve this case in Plaintiff's and Class Members' favor.

8.     By the time the Settlement in principle was reached, Plaintiff and Class Counsel fully understood the claims, defenses, and were well informed of the strengths and weaknesses of the case to competently assess the risks of continued litigation.

9.     Plaintiff and Class Counsel did not discuss Attorneys' Fees and Expenses with Defendant until after the substantive terms of the Settlement had been agreed upon. On February 24, 2025, Class Counsel requested 30.00% of the Settlement Fund in attorneys' fees and expenses ($150,000) (ECF No. 35). As anticipated, additional time has been spent by Class Counsel and Plaintiff's supporting counsel with a current lodestar of $80,953.66, which results in a lodestar multiplier of 1.9.

10.     After the Settlement was reached, the Parties undertook a competitive bidding process to retain a Claims Administrator for the Class—Atticus Administration LLC. This included soliciting cost proposals from multiple settlement administrators. Atticus is a well-known settlement and notice administrator with a history of successfully administering many class action settlements, including many data breach settlements. Atticus implemented a successful notice program that reached more than 98% of the Settlement Class and was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object.

11.     It is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant in further protracted litigation. This case could take years to litigate with briefing and arguing of dispositive motions; engaging in voluminous discovery; participating in mediation sessions; and months of continued settlement negotiations. This view is informed by Class Counsel's decades of work litigating complex actions, including data breach class actions. Federman & Sherwood has extensive experience in successfully litigating data breach class actions. *See* **Exhibit 2** to Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 29-2) (resume of Federman & Sherwood).

12.     Plaintiff has no conflict with the Settlement Class Members and has demonstrated his adequacy by: (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the Class Action Complain; (iv) being available as needed throughout the litigation; (v) monitoring the litigation; and (vi) being available as needed throughout the settlement approval process.

13.    Class Counsel represent there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Atticus to perform notice and settlement administration services.

14.    It is my opinion based on my experience in prosecuting data breach class actions that the proposed class action settlement is fair, reasonable, and adequate and is an outstanding and timely result for the Settlement Class Members.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 1, 2025                              Respectfully submitted,

*/s/: William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
-and-
4131 North Central Expressway, Suite 900
Dallas, Texas 75204
T: (405) 235-1560
wbf@federmanlaw.com

***Class Counsel for Plaintiff Kyle Beer and the Proposed Settlement Class***

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
Abingdon Division

| | |
|---|---|
| Kyle Beer, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Bluefield University,<br><br>    Defendant. | Case No. 1:23-cv-00055-JPJ-PMS |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of this 26th day of August, 2024, and entered into by and among the following Settling Parties (as defined below): (i) Kyle Beer ("Plaintiff Beer" or "Plaintiff"), individually and on behalf of the Settlement Class (as defined below), his counsel of record FEDERMAN & SHERWOOD ("Plaintiff's Counsel" or "Class Counsel"); and (ii) Bluefield University ("Defendant" or "Bluefield," and together with Plaintiff, the "Settling Parties"), through its counsel of record MCDONALD HOPKINS LLC.  The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, release, and settle the Released Claims (as defined below), based upon the terms and conditions below.

## I.    THE LITIGATION

Plaintiff, a former applicant to Bluefield, alleges that on May 1, 2023, an unauthorized actor intentionally targeted and gained access to Bluefield's computer network exposing Plaintiff's and Class Members' personal identifiable information ("PII") (the "Incident").  [Compl., ¶ 22]. Plaintiff further alleges that the PII of approximately 21,348 individuals was compromised in the

Incident, including names, Social Security numbers, student ID numbers, and student records. Plaintiff alleges that Bluefield did not begin notifying impacted individuals until November 27, 2023. [*Id.* at ¶ 27]. Plaintiff alleges that following the Incident (i) he spent time dealing with the consequences of the Incident, which included time monitoring his accounts for fraudulent activity; (ii) loss of privacy due to his PII being exposed to cybercriminals; (iii) loss of the benefit of the bargain because Bluefield did not adequately protect his PII; (iv) severe emotional distress because identity thieves now possess his PII; (v) exposure to an increased and imminent risk of fraud; (vi) the loss in value of his PII; and (vii) other economic and non-economic harm. [*Id.* at ¶ 50]. Following notification of the Incident, on December 9, 2023, Plaintiff sued Bluefield relating to the Incident.

Pursuant to the terms  below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Bluefield and the Released Persons (as defined below) relating to the Incident by and on behalf of Plaintiff and Settlement Class Members (as defined below) and any other such actions by and on behalf of any other individuals originating or that may originate in jurisdictions in the United States of America ("United States") against Bluefield and the Released Persons relating to the Incident.

## II.    CLAIMS OF PLAINTIFF AND BENEFITS OF SETTLING

Plaintiff believes that the claims asserted in the Litigation as set forth in the Complaint have merit.  Plaintiff and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Bluefield through further discovery, motion practice, trial, and potential appeals.  They have also considered the uncertain outcome and risk of further litigation as well as the difficulties and delays inherent in such litigation.  Class Counsel are highly experienced in class-action litigation and very knowledgeable

33732397.8

regarding the relevant claims, remedies, and defenses at issue in data-breach litigation in general and in this Litigation in particular. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Bluefield denies each of the claims and contentions alleged against it in the Litigation. Bluefield denies all allegations of wrongdoing or liability that are alleged, or which could be alleged, in the Litigation. Nonetheless, Bluefield has concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Bluefield has considered the uncertainty and risks inherent in any litigation. Bluefield has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff Beer, individually and on behalf of the Settlement Class, Class Counsel, and Bluefield that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except as to those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1.    **Definitions**

33732397.8

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this Agreement.

1.2    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator (as defined below).

1.3    "Claims Administrator" means Atticus Administration LLC, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data-breach litigation.

1.4    "Claims Deadline" means the postmark and/or online submission deadline for Valid Claims (as defined below) pursuant to ¶ 8.2.

1.5    "Claim Form" means the form that the Settlement Class Members must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein.  The Claim Form shall require a sworn signature or electronic verification under penalty of perjury but shall not require notarization.  The Claim Form will be substantially in a form as shown in the template attached hereto as **Exhibit C** and will be available on both the Settlement Website (as defined below) and in paper format if specifically requested by a Settlement Class Member.

1.6    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7    "Court" means the United States District Court for the Western District of Virginia.

1.8    "Defendant" means Bluefield University, also referred to as "Defendant" or "Bluefield" throughout.

1.9    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.11 herein have occurred and been met.

4

1.10    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court; (ii) the Court has entered a Judgment (as defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.11    "Incident" means the "Data Breach" alleged in the Complaint, whereby unauthorized user(s) gained access to Bluefield's network, exposing the highly sensitive PII of approximately 21,348 individuals, on May 1, 2023.  Bluefield provided notification of the Incident to all potentially impacted individuals beginning on November 27, 2023.

1.12    "Judgment" means a judgment rendered by the Court, substantially in the form as shown in **Exhibit E**.

1.13    "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in the template attached as **Exhibit B** hereto.

1.14    "Objection Date" means the date by which Settlement Class Members' objections must be filed with the Clerk of the Court for that objection to be timely and effective.

1.15    "Opt-Out Date" means the date by which requests for exclusion from settlement must be postmarked in order to be effective and timely.

1.16    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative,

trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.17    "PII" means, but is not limited to, individual names, Social Security numbers, student ID numbers, student records, and any other types of personally identifiable information collected or maintained by Bluefield leading to notification regarding the Incident.

1.18    "Plaintiff" or "Class Representative" means Plaintiff Kyle Beer.

1.19    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class, substantially in the form as shown in **Exhibit D** hereto.  The Settling Parties will prepare a mutually agreeable Preliminary Approval Order.

1.20    "Settlement Class Counsel" and/or "Class Counsel" means William B. Federman of the law firm FEDERMAN & SHERWOOD.

1.21    "Related Parties" means Defendant Bluefield University's respective past or present subsidiaries, divisions, and related or affiliated entities, and each of Defendant's and their respective predecessors, successors, trustees, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in this Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge.

1.22    "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or

6

33732397.8

premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect; negligence; negligence *per se*; breach of implied contract; breach of fiduciary duty; invasion of privacy; unjust enrichment; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Incident. Released Claims shall not include the right of any Settlement Class Member, Class Counsel, or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.23    "Released Persons" means Defendant and the Related Parties.

1.24    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.25    "Settlement Class" means "all natural persons residing in the United States who were sent a Notice Letter notifying them that their PII was compromised in the Incident, or for whom Bluefield has alternate contact information." The Settlement Class specifically excludes: (i) Bluefield, the Related Parties, and their officers and directors; (ii) all Settlement Class Members

7

who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Incident or who pleads *nolo contendere* to any such charge.

1.26    "Settlement Class Member(s)" or "Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.27    "Settlement Fund" means the non-reversionary sum of five hundred thousand dollars ($500,000.00) to be paid by Defendant or its insurer as specified in this Agreement, including any interest accrued thereon after payment, this being the full and complete extent of Defendant's obligations with respect to the Settlement but for any remedial business practice changes agreed to by the Parties.

1.28    "Settlement Website" means the website described in ¶ 3.2(c).

1.29    "Settling Parties" means, collectively, Bluefield and Plaintiff, individually and on behalf of the Settlement Class.

1.30    "Short Notice" means the content of the mailed notice to the proposed Settlement Class Members, substantially in the form as shown in the template attached as **Exhibit A** hereto. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members, among other things, of the Claims Deadline, the Opt-Out Date, the Objection Date, the requested attorneys' fees, and the date of the Final Fairness Hearing (as defined below).

1.31    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her

8

settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.

Settlement Class Members, including Plaintiff, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.32    "United States" as used in this Settlement Agreement includes all 50 states, the District of Columbia and all territories.

1.33    "Valid Claims" means settlement claims in an amount approved by the Claims Administrator.

## 2.    Settlement Benefits

2.1    **Establishment of Settlement Fund.** Subject to the terms of this Settlement Agreement, Bluefield shall fund a non-reversionary settlement fund ("Settlement Fund") in the amount of $500,000.00.

    a)    **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Bluefield in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated;

    b)    **Custody of the Settlement Fund.** The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction

33732397.8

of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated;

c)   **Use of the Settlement Fund.** As further described in this Agreement, the Settlement Fund shall be used by the Claims Administrator to pay for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Approved Claim(s) for Documented Out-of-Pocket Losses; (iv) Approved Claim(s) for Lost Time; (v) Approved Claims for Credit Monitoring and Identity Theft Protection Services; (vii) Approved Claims for Alternative Cash Payments; and (viii) Attorneys' Fees and Service Award Payments approved by the Court. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

2.2   **Reimbursement for Documented Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for up to Four Thousand Five Hundred Dollars ($4,500.00) for reimbursement of Documented Out-of-Pocket Losses. To receive reimbursement for Documented Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add

clarity or support other submitted documentation. A claim for reimbursement for Documented Out-of-Pocket Losses may be combined with a claim for Lost Time, but in no circumstance will a Settlement Class Member be eligible to receive more than the $4,500.00 individual cap.

a) **Assessing Claims for Documented Out-of-Pocket Losses.** The Claims Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Claims Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Documented Out-of-Pocket Losses reflects valid Documented Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Breach but may consult with Class Counsel and Bluefield's Counsel in making individual determinations. Any such consultation shall be made with both Class Counsel and Bluefield's Counsel. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Claims Administrator to consider (i) whether the timing of the loss occurred on or after May 1, 2023; and (ii) whether the PII used to commit identity theft or fraud consisted of the same type of PII that was potentially impacted as a result of the Data Security Incident. The Claims Administrator is authorized to contact any Settlement Class Member (through the information provided on the Settlement Class Member's Claim Form) to seek clarification regarding a submitted claim prior to deciding its validity.

2.3    **Reimbursement for Lost Time.** All Settlement Class Members may submit a claim for reimbursement of attested Lost Time up to five (5) hours at twenty-five dollars ($25.00)

11

per hour. Settlement Class Members can receive reimbursement of Lost Time with an attestation that the time spent was reasonably related to mitigating the effects of the Data Security Incident. Claims for Lost Time are capped at One Hundred Twenty-Five ($125.00) per individual. A claim for Lost Time may be combined with a claim for reimbursement for Documented Out-of-Pocket Losses, but in no circumstance will a Settlement Class Member be eligible to receive more than the $4,500.00 individual cap.

      a)    **Assessing Claims for Lost Time.** The Claims Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Lost Time but may consult with Class Counsel and Bluefield's Counsel in making individual determinations. Any such consultation shall be made with both Class Counsel and Bluefield's Counsel. The Claims Administrator is authorized to contact any Settlement Class Member (through the information provided on the Settlement Class Member's Claim Form) to seek clarification regarding a submitted claim prior to deciding its validity.

2.4    **Credit Monitoring and Identity Theft Protection.** All Settlement Class Members are eligible to enroll in three (3) years of one-bureau Credit Monitoring and Identity Theft Protection Services provided by CyEx, regardless of whether the Settlement Class Member submits a claim for reimbursement of Documented Out-of-Pocket Losses or Lost Time. A Settlement Class Member who opted into the complimentary credit monitoring services offered by Defendant in its November 27, 2023 Notice Letter, is still eligible to enroll in the three (3) years of one-bureau Credit Monitoring and Identity Theft Protection Services provided by CyEx. However, if a Settlement Class Member elects to receive an Alternative Cash Payment (discussed

below) they shall not be eligible to receive Credit Monitoring and Identity Theft Protection Services. The Claims Administrator shall send an activation code to each valid Credit Monitoring Services claimant within fourteen (14) days of the Effective Date which can be used to activate Credit Monitoring Services. Such enrollment codes shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such codes shall be sent via U.S. mail. The activation codes will be valid for a period of 180 days after mailing and may be used to enroll for the full three-year term at any point during those 180 days. The Claims Administrator shall provide Credit Monitoring and Identity Theft Protection Services to all valid claimants who timely enroll in these services for a period of three (3) years from the date of activation.

2.5   **Alternate Cash Payment.** In lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses, reimbursement for Lost Time, and/or Credit Monitoring and Identity Theft Protection Services, all Settlement Class Members may elect to submit a claim for a one-time Alternative Cash Payment of up to One Hundred Dollars and Zero Cents ($100.00). To receive the Alternative Cash Payment, Settlement Class Members must submit a valid Claim Form indicating the selection of an Alternative Cash Payment in lieu of all other benefits they may be eligible to receive under the Settlement Agreement. However, the election to receive an Alternative Cash Payment does not preclude the Class Representative from receiving a Court approved Service Award Payment.

2.6   **Remedial Measures.** Separate from and in addition to the Settlement Fund, Defendant agrees to provide written confirmation to Plaintiff's Counsel of subsequent remedial measures taken after the Data Breach to protect the continuing interests of Plaintiff's and Settlement Class Members' data security. Specifically, upon request, Defendant will provide written confirmation of the remedial measures implemented to date to Class Counsel, which shall

13

include, at least: (i) upgrading firmware for all network equipment; (ii) moving all network equipment to unified platform for improved management control; (iii) redesigning logical network to place all traffic behind the firewalls; (iv) implementing network segmentation; (v) updating and strengthening firewall rules; (vi) installing Crowdstrike for all faculty and staff; (vii) strengthening authentication procedures for all users and moving VPN and most third-party logins to that procedure in order to provide same protections; (viii) setting up conditional access policies; (ix) creating new MAC-filtered SSIDs for devices that do not support login (IOT); (x) implementing new and/or improved email security policies; (xi) setting up tools to protect against phishing attacks and spam and hardened associated rules; (xiii) removing unnecessary vendor permission.

      a)      **Confidentiality**. The information provided by Defendant pursuant to Paragraph 2.6 shall be treated as confidential and cannot be used for any purpose other than approval and enforcement of this Settlement Agreement.

    2.7    **Settlement Class Certification.** The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

33732397.8

3.    **Order of Preliminary Approval and Publishing of Notice of Final Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Plaintiff's Counsel shall submit this Settlement Agreement to the Court as part of a motion for preliminary approval of the Settlement Agreement requesting entry of a mutually agreeable Preliminary Approval Order requesting, *inter alia:*

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.7;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of William B. Federman of the law firm FEDERMAN & SHERWOOD as Class Counsel;

d)    appointment of Plaintiff Kyle Beer as the Class Representative;

e)    approval of a customary form of Short Notice to be e-mailed or mailed by first-class United States Postal Service ("USPS") mail to Settlement Class Members in a form substantially similar to the template attached as **Exhibit A** hereto;

f)    approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the template attached as **Exhibit B** hereto, which, together with the Short Notice, shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, the requested attorneys' fees, and the date, time and place of the Final Fairness Hearing;

g)    approval of the Claim Form to be available on the Settlement Website for submitting claims and available in .pdf format on the Settlement Website for or if

15

specifically requested by the Settlement Class Member, in a form substantially like the template attached as **Exhibit C** hereto; and

h)     appointment of Atticus Administration LLC as the Claims Administrator.

3.2     The Settlement Fund shall be used to pay for notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a)     **Class Member Information**: Within fourteen (14) days of entry of the Preliminary Approval Order, Bluefield shall provide the Claims Administrator with the name, physical address, or e-mail, if available, of each Settlement Class Member (collectively, "Class Member Information") that Bluefield and/or the Related Parties possess.

b)     The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time.  Except to administer the settlement as provided in this Agreement, or to provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

c)     **Settlement Website**: Prior to the dissemination of the Short Notice, the Claims Administrator shall establish the Settlement Website that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The Settlement Website shall include, in .pdf format and

16

available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Agreement; (v) the Complaint; (vi) Class Counsel's application for attorneys' fees and expenses and the service award for Class Representatives; and (vii) any other materials agreed upon by the Settling Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form, and supporting documentation, electronically.

d)     **Short Notice**: Within forty-five (45) days of entry of the Preliminary Approval Order and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class members as follows:

- Via postcard or by email provided to Bluefield and/or the Related Parties by the Settlement Class Members. Before any physical mailing under this paragraph occurs, the Claims Administrator shall run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS within thirty (30) days of entry of the Preliminary Approval Order.

- If a Short Notice is returned to the Claims Administrator by USPS because the postal address of the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator

17

shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice.

• If a Short Notice is returned to the Claims Administrator by email because the email address of the recipient is not valid, the claims administrator shall re-send the Short Notice to the postal address on file within seven (7) days of receiving the returned Short Notice.

• In the event that subsequent to the first mailing of a Short Notice, and at least fourteen (14) days prior to the Opt-Out Date and the Objection Date, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information.  This shall be the final requirement for mailing.

• The date of the first mailing of the Short Notice shall be deemed the "notice commencement date" for purposes of calculating the opt-out and objection deadlines, and all other deadlines that flow from the notice commencement date.

33732397.8

e) **Long Notice**. Within forty-five (45) days after the date of the Preliminary Approval Order the Claims Administrator shall make the Long Notice and Claim Form available to the Settlement Class Members on the Settlement Website. The Settlement Website shall allow Settlement Class Members to submit claims via the website.

f) Publishing, on or before the date of mailing the Short Notice, the Claim Form and the Long Notice on the Settlement Website as specified in the Preliminary Approval Order, and maintaining and updating the Settlement Website throughout the claim period;

g) A toll-free help line shall be made available to provide Settlement Class Members with additional information about the settlement and to respond to Settlement Class Members' questions.  The Claims Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request to Settlement Class Members; and

h) Contemporaneously with seeking Final approval of the settlement, Class Counsel and Bluefield shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.

3.3    The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The notice program shall commence within forty-five (45) days after entry of the Preliminary Approval Order and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

3.4    Class Counsel and Bluefield's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant Final approval of the settlement set forth herein.

3.5    Bluefield will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (the "CAFA Notice"), no later than ten (10) days after this Settlement Agreement is filed with the Court. The cost of providing the CAFA Notice shall be paid from the Settlement Fund.

**4.    Opt-Out Procedures**

4.1    Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated email address or Post Office box established by the Claims Administrator.  Persons wishing to opt-out of the Settlement Class will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked (or dated for emails) no later than sixty (60) days after the date on which the notice program commences pursuant to ¶ 3.2(d).

4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any cash benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

**5.    Objection Procedures**

33732397.8

5.1      Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection to the Court by the Objection Date. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court and contain the case name and docket number *Beer v. Bluefield University*, Case No. 1:23-cv-00055-JPJ-PMS (D. Va.) no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d), and served concurrently therewith upon Class Counsel, William B. Federman of the law firm FEDERMAN & SHERWOOD, 10205 North Pennsylvania Avenue, Oklahoma City, OK 73120; and counsel for Bluefield, Christopher Dean of the law firm MCDONALD HOPKINS LLC, 600 Superior Ave. East, Suite 2100, Cleveland, Ohio 44114. Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement

Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final order approving this Settlement Agreement, or the Judgment to be entered upon Final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.    Releases**

6.1    Upon the Effective Date, each Settlement Class Member (who has not timely and validly excluded himself or herself from the settlement), including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member (who has not timely and validly excluded himself or herself from the settlement), including Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims are asserted.

6.2    Nothing in this ¶ 6 shall preclude any action to enforce the terms of this Settlement Agreement by Plaintiff, Settlement Class Members, Class Counsel, and/or Bluefield.

**7.    Plaintiff's Counsel's Attorneys' Fees, Costs, and Expenses; Service Award to Plaintiff**

7.1    At least fourteen (14) days before the Objection Deadline, Class Counsel will file a motion for an award of attorneys' fees and litigation costs and expenses to be paid from the Settlement Fund. Bluefield takes no position on Plaintiff's counsel's request for an award of attorneys' fees and reimbursement of costs and expenses not to exceed thirty percent (30.00%) of

the Settlement Fund ($150,000.00). Fee Award and Costs shall be paid by the Claims Administrator from the Settlement Fund, in the amount approved by the Court, within thirty (30) days of the Effective Date.

7.2     At least fourteen (14) days before the Objection Deadline, Class Counsel will file a motion seeking a service award payment for the Class Representative in recognition of his contributions to this Action. Bluefield takes no position on Class Counsel's request for a service award not to exceed One Thousand Five Hundred Dollars and Zero Cents ($1,500.00). The Service Award shall be paid by the Claims Administrator from the Settlement Fund, in the amount approved by the Court, within thirty (30) days of the Effective Date.

7.3     Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiff's counsel and any other attorneys for Plaintiff. Bluefield and its insurers and reinsurers shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

7.4     In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and costs and expenses in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein.  No order of the Court, or modification or reversal or appeal of any order of the

Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Class Counsel or Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.      Administration of Claims**

8.1      The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2.  Class Counsel and Bluefield shall be given reports as to both claims and distribution and have the right to review and obtain supporting documentation to the extent necessary to resolve claims administration issues.

8.2      Settlement Class Members seeking reimbursement under ¶ 2 must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th day after the deadline for the commencement of notice to Settlement Class Members as set forth in ¶ 3.2(d) (the "Claims Deadline"). The notice to the Settlement Class Members will specify this deadline and other relevant dates described herein.

8.3      Any checks for Valid Claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. Any electronic payment (e.g., by Zelle) of Valid Claims shall be distributed according to the same time frame.

8.4      All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise expressly allowed by law or the Settling Parties' written agreement, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

33732397.8

8.5     No Person shall have any claim against the Claims Administrator, claims referee, Bluefield, Released Persons, Class Counsel, Plaintiff, Plaintiff's Counsel, and/or Bluefield's counsel based on distributions of benefits to Settlement Class Members.

8.6     Information submitted by Settlement Class Members in connection with submitted claims under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, claims referee, Class Counsel, and counsel for Bluefield.

**9.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)     the Court has entered the Judgment granting Final approval to the settlement as set forth herein; and

c)     the Judgment has become Final, as defined in ¶ 1.12.

9.2     If all conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4, unless Class Counsel and counsel for Bluefield mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Class Counsel and to counsel for Bluefield a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement or the releases set forth in ¶¶ 6.1, 6.2, and 6.3 above are not approved by the Court, either preliminarily or finally, or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Settling Parties

25

shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and (iii) any Judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.    Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service award shall constitute grounds for cancellation or termination of the Settlement Agreement.

**10.    Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; (ii) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.    The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.    The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.    The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.    It is agreed that no Party shall

have any liability to any other Party as it relates to the Litigation, except as set forth in the Settlement Agreement.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action related to the Incident that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5    The Settlement Agreement contains the entire understanding between Bluefield and Plaintiff regarding the payment of the Litigation and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Bluefield and Plaintiff in connection with the payment of the Litigation.  Except as otherwise provided herein, each party shall bear its own costs.  This Agreement supersedes all previous agreements made between Bluefield and Plaintiff.  Any agreements reached between Bluefield, Plaintiff, and any third party, are expressly excluded from this provision.

33732397.8

10.6    Class Counsel, on behalf of the Settlement Class, are expressly authorized by Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

10.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. No assignment of this Settlement Agreement will be valid without the other party's prior, written permission.

10.10    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11    As used herein, "he" means "he, she, or it"; "his" means "his, hers, or its"; and "him" means "him, her, or it."

10.12    All dollar amounts are in United States dollars (USD).

10.13    Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive monetary settlement benefits. All settlement checks shall be void ninety

28

(90) days after issuance and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six (6) months after the Effective Date to request re-issuance by the Claims Administrator.

10.14 If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Bluefield shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.15 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed by their duly authorized attorneys.


[*Signature blocks on next page*]


**AGREED TO BY:**

By: /s/ _____

**FEDERMAN & SHERWOOD**
William B. Federman (admitted *pro hac vice*)
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: 405.235.1560
wbf@federmanlaw.com

Alexis I. Tahinci
VSB No. 85996
**TAHINCI LAW FIRM PLLC**
105 Ford Avenue, Suite 3
Kingsport, TN 37663
(423) 406-1151
alexis@tahincilaw.com

*Counsel for Plaintiff and the Putative Class*

By: /s/ _____

Kyle Beer, Plaintiff

By: /s/ _____

Christopher G. Dean
(admitted *pro hac vice*)
Ohio Bar No. 0092883
**MCDONALD HOPKINS, LLC**
600 Superior Ave., E, Ste. 2100
Cleveland, Ohio 44114
Tel: (216) 348-5400
cdean@mcdonaldhopkins.com

Stephen M. Hodges
VSB No. 01220
**PENN, STUART & ESKRIDGE**
P.O. Box 2288
Abingdon, Virginia  24212
Tel: (276) 628-5151
Fax: (276) 628-5621
shodges@pennstuart.com

*Counsel for Defendant Bluefield
University*

By: /s/ _____

Bluefield University, Defendant

# EXHIBIT 2

# FEDERMAN & SHERWOOD

(An Association of Attorneys and Professional Corporations)

10205 N. PENNSYLVANIA AVENUE
OKLAHOMA CITY, OKLAHOMA 73120
TELEPHONE:  405-235-1560
FACSIMILE: 405-239-2112

4131 NORTH CENTRAL EXPRESSWAY, STE. 900
DALLAS, TEXAS 75204
TELEPHONE: 214- 696-1100
FACSIMILE: 214-740-0112

## FIRM RESUME

**WILLIAM B. FEDERMAN.** _Education_:  Boston University (B.A., cum laude, 1979); University of Tulsa (J.D., 1982); Phi Alpha Delta (Treasurer, 1980-1982).  _Admitted to practice_: United States District Courts for the following Districts:  Western, Northern and Eastern, Oklahoma; Eastern, Northern, Southern, and Western, New York; Southern, Northern, Eastern and Western, Texas; Eastern and Western, Arkansas; District of Columbia; District of Colorado; Central and Northern Districts of Illinois; Northern District of Ohio; District of Nebraska; Eastern  and Western Districts of Michigan; Eastern District of Wisconsin; United States Court of Appeals for the following Circuits: First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh and Federal; and United States Supreme Court. _Lectures/Publications_: _"Class Actions, New Rules and Data Breach Cases,"_ 40th _Annual OCBA Winter Seminar 2019; "A Case Study of Ethical Issues in Complex Litigation and Trends in Class Certification,"_ 39th Annual OCBA Winter Seminar, 2018; _"Talkin' About Insurance Coverage and Complex Litigation: What Every Lawyer and Client Should Know,"_ 38th Annual OCBA Winter Seminar, 2017; _"Securities Litigation: Using Data to Make the Case,"_ by Bloomberg BNA, 2016; _"The Changing Landscape for Prosecution of Financial Claims Involving Insolvent Companies"_ 37th Annual OCBA Winter Seminar, 2016; _"Current Status of Securities Class Actions: Where are the Courts Taking Us?"_ Houston Bar Association, 2014.  _"Class & Derivative Actions and Securities Litigation,"_ 2013 Annual Meeting of the American Bar Association; _"Litigation and Employment Law Update,"_ Securities Industry Association Compliance and Legal Division; _"Inside a Disclosure Crisis"_, 30th Annual Northwest Securities Institute Annual Meeting and sponsored by the Washington Bar Association; _"Managing Directors' Liability,"_ 3rd Annual Energy Industry Directors Conference and sponsored by Rice University; _"Executive Liability - 2009 D & O Market Trends,"_ Chartis Insurance; _"Derivative Actions and Protecting the Corporation – Critical Issues in Today's Banking,"_ Oklahoma Bar Association and the Oklahoma Bankers Association; _"Arbitration - What Is It?  Why Should a Lawyer Suggest or Use It?,"_ Oklahoma Bar Association; _"The Attorney and Accountant as Targets in Failed Financial Institution Litigation,"_ American Bar Association Trial Practice Committee; _"Effective Arbitration in the 1990's - Adapting to Build a Successful Practice,"_ Oklahoma County Bar Association; _"Current Issues in Direct Investments and Limited Partnerships: The Litigation Scene From All Perspectives,"_ American Bar Association Litigation Section; _"Stockbroker Litigation and Arbitration,"_ Securities Arbitration Institute. Author: _"Who's Minding the Store: The Corporate Attorney-Client Privilege,"_ 52 O.B.J. 1244, 1981; _"Potential Liability From Indirect Remuneration in Private Oil and Gas Offerings,"_ 11 Sec. Reg. L.J. 135, 1983; _"Capitalism and Reality Meet in the Courts. . . Finally,"_ 59 O.B.J. 3537, 1987; _"Class Actions, New Rules & Data Breach Cases,"_ Annual OCBA Winter Seminar, 2019. _Membership_: Arbitration Panel, New York Stock Exchange; Federal Bar Association; Oklahoma County Bar Association (Committee on Professionalism, 1987-1990); Oklahoma Bar Association (Civil Procedure/Evidence Code, Lawyers Helping Lawyers Assistance Program and Rules of Professional Conduct Committees, 2017-2020); American Bar Association (Committee on Securities Litigation and Corporate Counsel); American Inns of Court (Barrister 1990-1993 and Master 2002-2004); inducted into the Outstanding Lawyers of America, 2003; received the Martindale-Hubbell peer review rating of AV Preeminent in both ethical standards and legal ability; recognized as one of the "Top Lawyers of 2013" for excellence and achievements in the legal community; Litigation Counsel of America (Trial Lawyer & Appellate Lawyer Honorary Society). _Awards/Honors_:  Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2018 (Global Law Experts Annual Awards); Securities Litigation and Arbitration Law Firm of the Year in Oklahoma – 2019, 2020 (Corporate INTL Magazine); Oklahoma Super Lawyers list by Thomson Reuters – 2019;

FEDERMAN & SHERWOOD
Page 2

Recognized for Exceptional Service and Outstanding Performance on behalf of the Federal Bar Association (Oklahoma City Chapter) Pro Bono Program – 2018-2019, 2020, Oklahoma Super Lawyer for 2022.

**STUART W. EMMONS. (In Memoriam)** *Education*: University of Oklahoma (J.D., 1987, with distinction); University of Oklahoma (B.B.A., Accounting, 1984, with distinction). *Admitted to practice*: 1987, Oklahoma; 1987, U.S. District Court for the Western District of Oklahoma; 1990, U.S. District Court for the Northern District of Oklahoma; 1992, U.S. Court of Appeals, Tenth Circuit; 1994, U.S. Court of Appeals, Eighth Circuit; U.S. Patent and Trademark Office; 2002, U.S. District Court for the District of Colorado; U.S. District Court for the Southern District of Texas; 2003, U.S. Court of Appeals, Second Circuit; 2004, U.S. District Court for the Northern District of Texas; U.S. Court of Appeals, Fifth Circuit; 2005, United States Supreme Court; 2005 U.S. Court of Appeals, Fourth Circuit; 2015, U.S. Court of Appeals, First Circuit; 2016, U.S. Court of Appeals, Ninth Circuit and U.S. Court of Appeals for the First Circuit. 1988-1989, Law Clerk to the Hon. Layn R. Phillips, U.S. District Court for the Western District of Oklahoma. *Published Decisions: American Fidelity Assurance Company v. The Bank of New York Mellon*, 810 F.3d 1234 (10th Cir. 2016); *Paul Spitzberg v. Houston American Energy Corporation, et al.*, 758 F.3d 676 (5th Cir. 2014); *Patipan Nakkhumpun v. Daniel J. Taylor, et al.,* 782 F.3d 1142 (10th Cir. 2015); *Membership*: Oklahoma County and Oklahoma Bar Associations.

**SARA E. COLLIER.** *Education*: Oklahoma Christian University (B.S. 2000); Oklahoma City University School of Law (J.D., 2004). *Admitted to practice*: Oklahoma, 2005; U.S. District Courts for the Western, Eastern and Northern Districts of Oklahoma, 2007; U.S. District Court for the Southern District of Texas, 2007, United States Court of Appeals for Veterans Claims in Washington, DC. *Membership*: Oklahoma Bar Association, American Bar Association. Ms. Collier focuses her practice on shareholder rights and shareholder derivative actions in state and federal courts.

**KENNEDY M. BRIAN**. *Education*: University of Central Oklahoma (B.M. in Musical Theater, 2018, cum laude; Minor in Real Estate Finance), University of Oklahoma (J.D., 2021; Dean's Honor Roll; Academic Achievement Award, Trial Techniques; 1L Moot Court Competition Distinguished Speaker Award; American Indian Law Review). *Admitted to practice:* Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2023; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024. *Membership:* Oklahoma Bar Association; Federal Bar Association; Junior League of Oklahoma City; Oklahoma County Bar Association. Ms. Brian focuses her practice on complex class action litigation, including consumer and data breach cases in state and federal courts across the nation.

**JESSICA A. WILKES.** *Education:* Oklahoma State University (B.S. in Finance, Economics, and Economics, with honors, 2018, magna cum laude), Baylor University School of Law (J.D. 2021, cum laude; Dean's Academic Excellence Full-Tuition Scholarship; Baylor Law Review, Technical Editor & Alumni Relations Coordinator; Research Assistant for Dean and Professors; Baylor Barrister Society; Mock Trial Team; Baylor Public Interest Society; Student Bar Association). *Admitted to practice:* Oklahoma 2021; U.S. District Court for the Eastern District of Oklahoma, 2021; U.S. District Court for the Western District of Oklahoma, 2021; U.S. District Court for the Northern District of Oklahoma, 2021; 10th Circuit Court of Appeals, 2021; U.S. District Court for the District of Colorado, 2024; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024; the Western District of Texas, 2024. *Membership:* Oklahoma Bar Association; Friends of Trivera; Junior League of Oklahoma City. Ms. Wilkes focuses her practice on complex class action litigation, including consumer, data breach, and securities cases in state and federal courts across the nation. Ms. Wilkes has experience in and engages

FEDERMAN & SHERWOOD
Page 3

in trial and appellate work. Prior to joining Federman & Sherwood, Ms. Wilkes actively practiced in litigation for the Oklahoma Attorney General's Office.

**TANNER R. HILTON.** *Education:* Texas A&M University (B.S. in Political Science, 2019); Oklahoma City University School of Law (J.D., 2022; Dean's List Spring of 2021; Order of the Barristers; Native American Law Student Association Moot Court Team, 2020-2022; CALI Award for Secured Transactions (2021)). Mr. Hilton graduated from Oklahoma City University School of Law in May of 2022. *Admitted to practice:* Oklahoma 2023; U.S. District Court for the Western District of Oklahoma, 2024; U.S. District Court for the Eastern District of Oklahoma, 2024; U.S. District Court for the Northern District of Oklahoma, 2024; U.S. District Court for the Eastern District of Texas, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Northern District of Texas, 2024; U.S. District Court for the Western District of Texas, 2024; U.S. District Court for the Northern District of New York, 2024. *Membership:* Oklahoma Bar Association, Federal Bar Association, and Order of the Barristers. Mr. Hilton's primary focus is in complex and class action litigation, including federal securities class actions, data breaches, and consumer class actions.

**ALEX J. EPHRAIM.** *Education:* University of Colorado – Denver (B.A. Political Science – Public Policy Analysis, 2018, summa cum laude, honor society, dean's list); University of Missouri – Kansas City School of Law (J.D. 2021; Second Century scholarship recipient, mock trial team, dean's list). *Admitted to practice:* Oklahoma, 2022; U.S. District Court for the Eastern District of Oklahoma, 2022; U.S. District Court for the Western District of Oklahoma, 2022; U.S. District Court for the Northern District of Oklahoma, 2022; U.S. District Court for the Southern District of New York, 2024; U.S. District Court for the Southern District of Texas, 2024; U.S. District Court for the Eastern District of Texas, 2024. *Membership:* Oklahoma Bar Association, Oklahoma County Bar Association, Federal Bar Association. Mr. Ephraim focuses his practice on complex class action litigation, including securities class actions, data breach, and consumer class actions.

**JONATHAN J. HERRERA.** *Education:* Austin College (B.A. in Business and Spanish, 2010, with Honors), University of Oklahoma College of Law (J.D., 2018, with Honors; Dean's Honor Roll, Order of the Solicitors, Hispanic National Bar Association President, 3L Service Award, Moot Court Competition Team Captain, Top Speaker Award). *Admitted to practice:* Oklahoma 2018. *Membership:* Oklahoma Bar Association; Oklahoma County Bar Association; Hispanic National Bar Association; OBA Law School Committee; OBA Awards Committee. Mr. Herrera is a transactional attorney whose multi-faceted practice encompasses a broad range of business litigation and disputes, including data breach and consumer class actions. He represents clients in complex business and commercial disputes in state and federal courts and administrative proceedings. Prior to joining Federman & Sherwood, Mr. Herrera practiced Criminal Defense in Oklahoma for over 5 years achieving successful outcomes for clients throughout Oklahoma.

***OF COUNSEL:***

**JOHN CHARLES SHERWOOD. (In Memoriam)** *Education:* Texas Christian University, (BBA, magna cum laude, 1981); Baylor School of Law (J.D., 1984). *Areas of Practice:* Litigation. *Board Certified:* Civil Trial Law, Personal Injury Trial Law, Texas Board of Legal Specialization. *Organizations:* Texas Trial Lawyers, Association of Trial Lawyers of America, Dallas Trial Lawyers Association, Dallas Bar Association, Former Chairperson of the Solo and Small Firm Section of the Dallas Bar Association (1999), Member of the College of the State Bar of Texas and founding President of Citizens For a Fair Judiciary (Political Action Committee). *Licenses and Courts of Practice:* Member of the State Bar of Texas, National Board of Trial Advocacy, Licensed as a Certified Public Accountant by the Texas State Board of Public Accountancy, admitted to practice before the United States Tax Court, United States District Court, Northern District of Texas, United States Fifth Circuit Court of Appeals, and the United

FEDERMAN & SHERWOOD
Page 4

States Supreme Court. *Papers Presented*: *Other People's Money,* Presented to the Dallas Bar Association, Solo and Small Firm Section; *Recognition*:  "Top Attorneys in Texas, Business Litigation," (2012).

**JOSHUA D. WELLS.** *Education*: Oklahoma Baptist University (B.A. 2004); Oklahoma City University College of Law (J.D. 2008) (Dean's List, Faculty Honor Roll, OCU American Trial Lawyers Association Moot Court Team, 2008; Staff Member, Law Review, 2006-07; Executive Editor, Law Review, 2007-08). *Admitted to practice*: Oklahoma, 2008; U. S. District Court for the Western District of Oklahoma; 2009, U.S. District Court for the Eastern District of Oklahoma; 2011, U.S. District Court for the Northern District of Oklahoma; 2012, U.S. Court of Appeals for the Tenth Circuit; 2016, U.S. Court of Appeals, Fourth Circuit. *Membership*: Oklahoma Bar Association; Federal Bar Association; American Bar Association. *Publication*:  *Stuck in the Mire: The Incomprehensible Labor Law,* 34 Okla. City U.L. Rev. 131 (2009). *Experience*:  Research Assistant to J. William Conger, General Counsel and Distinguished Lecturer of Law, Oklahoma City University and President of the Oklahoma Bar Association (2007-08). General Counsel for Reaching Souls International (2013-2016). Mr. Wells has significant experience in complex and class action litigation in various state and federal courts, with more than a decade of experience protecting consumer and shareholder rights. Mr. Wells knows how to efficiently prosecute complex cases to conclusion and practices in areas of estate planning, probate, and guardianships for both children and adults. He is the recipient of the Federal Bar Association Pro Bono Exceptional Service Award (2019) and is a leader in his church.

### *PARALEGALS:*

**JANE E. ADAMS.** Mrs. Adams has over 25 years of Administrative and Finance experience focusing her career on Human Resources.  Additionally, she has first-hand experience with FEMA response as well as government contractual administration.

**TIFFANY R. PEINTNER.** Mrs. Peintner has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Mrs. Peintner worked in patent law, oil and gas, probate, banking and real estate, family law, personal injury and insurance defense. She works in securities and civil litigation for the firm.

**TASHIA D. POORE.** Ms. Poore has worked in the legal community for over fifteen years. Before joining Federman & Sherwood, Ms. Poore worked in complex civil litigation, real estate and transactions, oil & gas, trusts and estate planning, banking and construction law. She works in the areas of data breach, shareholder derivative litigation, securities and complex litigation for the firm.

**FRANDELIND V. TRAYLOR.**  Mrs. Traylor has worked in the legal community for over fifteen years. She provides class action, securities and derivative litigation, and product liability support for the firm.

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| CONSUMER CLASS ACTIONS | COURT |
|---|---|
| ABC Legal Services, LLC (Data Breach) | USDC Western District of Washington |
| Accreditation Commission for Education in Nursing (Data Breach) | USDC Northern District of Georgia |
| Albany ENT & Allergy (Data Breach) | Supreme Courts of the State of New York, Albany County |
| Altice USA, Inc. (Data Breach) | USDC Southern District of New York |
| Arden Claims Service LLC (Data Breach) | Supreme Court of the State of New York |
| Artech, LLC (Data Breach) | USDC Northern District of California |
| AssistRx, et al (Data Breach) | USDC Middle District of Florida |
| AT&T Services Inc | USDC Northern District of Texas |
| Autobell Car Wash, LLC (Data Breach) | USDC Western District of North Carolina |
| Avem Health Partners, Inc. (Data Breach) | USDC Western District of Oklahoma |
| BHI Energy Services (Data Breach) | USDC District of Massachusetts |
| Brinker International, Inc. (Chili's) (Data Breach) | USDC Middle District of Florida |
| Bryan Cave Leighton Paisner LLP (Data Breach) | USDC Northern District of Illinois |
| Burgerville, LLC (Data Breach) | Circuit Court, State of Oregon, Multnomah County |
| Carvin Wilson Software, LLC (Data Breach) | USDC District of Arizona |
| CentralSquare Technologies LLC (Data Breach) | USDC Southern District of Florida |
| Christie Business Holdings Company PC (Data Breach) | USDC Central District of Illinois |
| Colorado Dept. of Health Care Policy & Financing/IBM (Data Breach) | District Court, City and County of Denver, State of Colorado |
| Dakota Growers Pasta Company, Inc. (Food Mislabeling) | USDC District of Minnesota/District of New Jersey |
| Dell, Inc. (Data Breach) | USDC Western District of Texas |
| Express Services, Inc. (Data Breach) | USDC Western District of Oklahoma |
| Farmers Union Hospital Association d/b/a Great Plains Regional Medical Center (Data Breach) | USDC Western District of Oklahoma |
| Filters Fast, LLC (Data Breach) | USDC Western District of Wisconsin |
| Golden Corral Corporation (Data Breach) (PSC) | USDC Eastern District of North Carolina |
| Great Plains Regional Medical Center (Data Breach) | USDC Western District of Oklahoma |
| Hy-Vee, Inc. (Data Breach) | USDC Central District of Illinois |
| Integris (Data Breach) (Co-Lead) | District Court of Oklahoma County State of Oklahoma |
| Intellihartx (Data Breach) (Executive Lead Counsel) | USDC Northern District of Ohio |
| Johns Hopkins Health System & Johns Hopkins University (Data Breach) | Circuit Court of Maryland for Baltimore City |
| Lansing Community College (Data Breach) (PSC) | USDC Western District of Michigan |
| LeafFilterNorth, LLC/LeafFilter North of Texas, LLC (Data Breach) | USDC Western District of Texas |
| Lime Crime, Inc. (Data Breach) | USDC Central District of California |
| Medical Review Institute of America, LLC (Data Breach) | USDC District of Utah |
| Mednax Services, Inc. (Data Breach) | USDC Southern District of Florida |
| MedQ, Inc. (Data Breach) | USDC Eastern District of Texas |
| Mercer University (Data Breach) | USDC Middle District of Georgia |
| MidFirst Bank and Midland Financial Co. (Data Breach) | USDC Western District of Oklahoma |
| Morris Hospital (Data Breach) | Circuit Court of the Thirteenth Judicial Circuit Grundy, County, Illinois |
| Infosys McCamish Systems, LLC (Data Breach) (Plaintiffs' Executive Committee) | USDC Northern District of Georgia |
| In re: Navvis & Company, LLC Data Breach Litigation (Data Breach) | USDC Eastern District of Missouri |
| Oklahoma Spine Hospital LLC | District Court of Oklahoma County, State of Oklahoma |
| OneTouchPoint (Data Breach) (PSC) | USDC Eastern District of Wisconsin |
| In Re: Orrick, Herrington & Sutcliffe Data Breach Litigation (Data Breach) (Interim Lead Counsel) | USDC Northern District of California |
| Panera, LLC (Data Breach) | USDC Eastern District of Missouri, Eastern Division |
| Peachtree Orthopaedic Clinic, P.A. (Data Breach) | Superior Court of Forsyth County, State of Georgia |
| Peco Foods, Inc. (Data Breach) (Plaintiffs' Executive Committee) | USDC Northern District of Alabama |
| Performance Health Technology Inc. | Circuit Court of the State of Oregon |
| Physician's Business Office, Inc. (Data Breach) | Circuit Court of Wood County, West Virginia |
| PracticeMax (Data Breach) | USDC District of Arizona |
| Prentke Romich Company (Data Breach) | USDC Northern District of Ohio |
| Progressive Casualty Insurance (Data Breach) | USDC Northern District of Ohio |
| In re: QTC Commercial Services, LLC d/b/a IMX Medical Management Services, LLP (Data Breach) | USDC Eastern District of Pennsylvania |
| Seven Counties Services, Inc. (Data Breach) | Commonwealth of Kentucky, Jefferson Circuit Court |
| Skidmore College (Data Breach) | USDC Northern District of New York |
| Smile Brands (Data Breach) | USDC Central District of California |
| Snap Finance (Data Breach) | USDC District of Utah |
| Solara Medical Supplies, LLC (Data Breach) | USDC Southern District of California |
| Sysco Corporation (Data Breach) (PSC) | USDC Southern District of Texas |
| TD Ameritrade, Inc. (Data Breach) | USDC District of Nebraska |

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| | |
|---|---|
| TMX Finance Corporation Services, Inc. (Data Breach) (PSC) | USDC Southern District of Georgia |
| Varsity Brands (Data Breach) | USDC Northern District of Texas, Dallas Division |
| Verisource Services, Inc. (Data Breach) | USDC Southern District of Texas |
| Wichita State University (Data Breach) | USDC District of Kansas |
| Yuma Regional Medical Center (Data Breach) | USDC District of Arizona |
| Zeroed-In Technologies, LLC (Data Breach) (Executive Committee) | USDC Middle District of Florida |
| **SHAREHOLDER DERIVATIVE CASES** | |
| Abercrombie & Fitch Company | USDC Southern District of Ohio |
| American Superconductor Corporation | Superior Court, Commonwealth of Massachusetts |
| Antares Pharma, Inc. | USDC District of New Jersey |
| In Re: Archer-Daniels-Midland Company Derivative Litigation | USDC District of Delaware |
| Arrowhead Research Corporation | Superior Court, State of California, County of Los Angeles |
| Carrier Access Corporation | USDC District of Colorado |
| Catalina Marketing Corporation | Chancery Court of the State of Delaware |
| Cell Therapeutics, Inc. | USDC Western District of Washington |
| Computer Associates | USDC Eastern District of New York |
| Delcath Systems, Inc. | USDC Southern District of New York |
| Dendreon Corporation | USDC Western District of Washington |
| Digital Turbine, Inc. | USDC Western District of Texas |
| Doral Financial Corporation | USDC Southern District of New York |
| Dynavax Technologies Corporation | Superior Court of the State of California; county of Alameda |
| First Bancorp | USDC District of Puerto Rico |
| Flowers Foods, Inc. | USDC Middle District of Georgia |
| Genta, Inc. | USDC District of New Jersey |
| GMX Resources, Inc. | District Court of Oklahoma County, Oklahoma |
| Great Lakes Dredge & Dock Corporation | Circuit Court of Illinois, Dupage County Chancery Division |
| Host America Corporation | USDC District of Connecticut |
| Motricity Inc. | USDC Western District of Washington |
| NutraCea | Superior Court of Maricopa County, Arizona |
| Nuverra Environmental Solutions, Inc. | Superior Court of Maricopa County, Arizona |
| Nyfix, Inc. | USDC District of Connecticut |
| OCA, Inc. | USDC Eastern District of Louisiana |
| ONEOK, Inc. | District Court of Tulsa County, Oklahoma |
| PainCareHoldings, Inc. | USDC Middle District of Florida |
| Seitel, Inc. | USDC Southern District of Texas |
| Southwest Airlines | USDC Northern District of Texas |
| Spectrum Pharmaceuticals, Inc. | USDC District of Nevada |
| Super Micro Computer, Inc. | USDC Northern District of California |
| The Spectranetics Corporation | USDC District of Colorado |
| ValueClick, Inc. | USDC Central District of California |
| Zix Corporation | USDC Northern District of Texas |
| **SECURITIES CLASS ACTIONS** | |
| Automatic Data Processing, Inc. (ADP) | USDC District of New Jersey |
| Amyris, Inc. | USDC, Northern District of California |
| Bellicum Pharmaceuticals, Inc. | USDC Southern District of Texas |
| Broadwind Energy, Inc. | USDC Northern District of Illinois |
| China Valves Technology, Inc. | USDC Southern District of New York |
| Cryo-Cell International, Inc. | USDC Middle District of Florida |
| Delta Petroleum, Inc. | USDC District of Colorado |
| Direxion Shares ETF Trust | USDC Southern District of New York |
| Ener1, Inc. | USDC Southern District of New York |
| Exide Technologies | USDC Central District of California |
| Galena Biopharma, Inc. | USDC District of New Jersey |
| Houston American Energy Corp. | USDC Southern District of Texas |
| Image Innovations Holdings, Inc. | USDC Southern District of New York |
| IZEA, Inc. | USDC Central District of California |
| Motive, Inc. | USDC Western District of Texas |
| Quest Energy Partners LP | USDC Western District of Oklahoma |
| Secure Computing Corporation | USDC Northern District of California |
| Superconductor Technologies, Inc. | USDC Central District of California |
| UTi Worldwide, Inc. | USDC Central District of California |
| Unistar Financial Service Corp. | USDC Northern District of Texas |
| **MDL PROCEEDINGS** | |

**SELECT CASES WHERE FEDERMAN & SHERWOOD HAS SERVED AS LEAD OR CO-LEAD COUNSEL**

| | |
|---|---|
| In re: Farmers Insurance Co. (Co-Lead and Liaison Counsel) | USDC Western District of Oklahoma |
| In re: Fortra File Transfer (Sub-Group Lead Counsel for Intellihartx) | USDC Southern District of Florida |
| In re: Home Depot, Inc. (Executive Committee) | USDC Northern District of Georgia |
| In re: Mednax Services Inc. (Data Breach – Co-Lead Counsel) | USDC Southern District of Florida |
| In re: Premera Blue Cross (Data Breach–Participating Counsel) | USDC District of Oregon |
| In re: Samsung Electronics America, Inc. (Co-Lead Counsel) | USDC Western District of Oklahoma |
| In re: The Sonic Corp. (Lead Counsel) | USDC Northern District of Ohio |
| **DEAL CASES (MERGERS)** | |
| Easylink Services International Corp. | Superior Court of Gwinnett County, Georgia |
| Genon Energy, Inc. | Chancery Court of the State of Delaware |
| Lawson Software, Inc. | Chancery Court of the State of Delaware |
| Network Engines, Inc. | Chancery Court of the State of Delaware |
| Paetec Holding Corp. Shareholder Litig. | Chancery Court of the State of Delaware |
| Williams Pipeline Partners, L.P. | District Court of Tulsa County, Oklahoma |
| Xeta Technologies, Inc. | District Court of Tulsa County, Oklahoma |